UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LEVELL MORGAN,

                      Plaintiff,

v.                                                             Case No. 23-cv-972-pp

WELLPATH, LLC
and MILWAUKEE COUNTY,

                      Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

      Levell Morgan, who is incarcerated at Dodge Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his serious medical needs. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

1

On July 24, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $21.04. Dkt. No. 5. The court received $22 toward that fee on August 14, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint has sued defendants Wellpath, LLC, and Milwaukee County. Dkt. No. 1 at ¶¶2, 4, page 3. The complaint concerns events that allegedly occurred beginning in August 2021, when the plaintiff was a pretrial detainee at the Milwaukee County Jail. Id. at ¶1, page 3.

The plaintiff alleges that on August 16, 2021, he arrived at the jail and underwent a medical screening. Id. at ¶1, page 4.[1] He told the screening nurse that he had serious medical needs, including a bulging hernia, a herniated

---

[1] The plaintiff included four paragraphs, numbered 1-4, in his "Introduction," then began again with paragraph #1 in his "Statement of Facts."

disc, degenerative disc disease, sciatic nerve damage, right shoulder pain and an allergy to ibuprofen. Id. He told the nurse that he was in "bad pain" from the hernia and from his back issues; the nurse told him staff would address his issues at his first clinical visit (which occurred two or three days later). Id. at ¶¶1–2. The plaintiff says he could get no medication until that visit. Id. at ¶2. The plaintiff saw Nurse Practitioner Simmons, who reviewed his medical history. Id. at ¶3. The plaintiff told her that he was approved for surgery earlier that August, and the surgery was supposed to take place at the Marshfield Medical Center in Beaver Dam. Id. He also told her that he was in "a tremendous amount of pain" from his back and from the hernia. Id. Simmons agreed that the plaintiff required surgery for his hernia, but she told him that Wellpath allowed her to prescribe only Tylenol and ibuprofen for his pain. Id. at ¶4. She said that stronger medication required approval by Medical Director Troutman. Id. She told the plaintiff there were "procedures and policies" she had to follow, and she asked the plaintiff to sign a consent form for the release of his medical information from his previous prisons and from Marshfield. Id. at ¶5. The plaintiff says, "I don't recall the date I signed one at that time for Pekin Correctional Institution about records for [his] back," explaining that Pekin was his prior place of incarceration. Id. Simmons prescribed the plaintiff Tylenol and the laxative Miralax, approved him unspecified "restrictions" and designated him for chronic care. Id. at ¶6.

The plaintiff alleges that shortly after that appointment, he began requesting medical treatment for his "intense pain" because the Tylenol was

4

not helping. Id. He says medical staff showed no urgency in his care and repeatedly delayed his treatment. Id. at ¶7. The plaintiff requested "equipment that may help ease pain and discomfort;" he says he had "delivered and placed in [his] property, extra mattress and blankets," but medical staff told him that the jail did not allow those things and that he had to ask security if he could have them. Id. The plaintiff says he spoke with "every Jail lieutenant and captain that [he] could speak with," and they told him "that medical has full authority over what equipment and apparatuses are needed for an inmates healthcare." Id. at ¶8. The plaintiff says he was told that if medical wrote the order, "we'll provide it." Id. Based on these conversations, the plaintiff "concluded that the Medical Director's office, currently held by Mrs. Handel (a representative of Wellpath) has full 'decision making authority' over inmate healthcare at Milwaukee County Jail." Id. at ¶9. He says Wellpath eventually wrote him orders when he "had reached a certain level of deprivation of health and persistent pleas for pain relief." Id.

The plaintiff saw Nurse Simmons again, though he does not say when, and explained that his symptoms were worsening. Id. at ¶10. He asked for stronger medication, but Simmons reiterated that she could not prescribe him something stronger. Id. She told him that she had not received a response to his surgery request, and she asked him to fill out another information request to send to Marshfield. Id. After two and a half months, the plaintiff was told that his records had arrived at the jail from Marshfield. Id. at ¶11. The plaintiff says he "was then told that the long process of a referral for surgery can be

5

Case 2:23-cv-00972-PP   Filed 10/11/23   Page 5 of 19   Document 11

written." Id. The plaintiff continued to complain about his worsening pain, which was affecting his sleep, sedentary activities like sitting, exercise including walking and using the bathroom. Id. at ¶12. He says Wellpath "supplied a jockstrap [for his hernia] that was completely ineffective." Id. He told other nurses from Wellpath that the Tylenol was ineffective, but "no one had an alternative." Id.

The plaintiff says he waited until January 2022, five and a half months, "before repair." Id. at ¶13. (The court infers that the "repair" the plaintiff refers to involves surgery or a procedure to address his hernia.) He claims he suffered additional bowel injury from the delay that caused him to require a laxative for a year after he underwent surgery. Id. He says Wellpath follows "adverse policy practices" including a "cost containment program" that caused the unnecessary delays. Id. at ¶¶13–14. He says he made multiple requests for specialized treatment and had "[a] back and forth" with Wellpath staff about his delayed treatment. Id. at ¶¶15–16. He says multiple nurses and doctors told him they would write him a referral but that the Medical Director would have to sign off on the referral. Id. at ¶16. He says he continued to receive "less than sub-par, inadequate pain management," despite being designated for chronic care. Id.

The plaintiff had a clinical review with a different nurse practitioner (he does not say when), during which he reported his still worsening symptoms and development of incontinence. Id. at ¶17. The nurse prescribed him adult diapers, which he says were ineffective. Id. She told him he "already receive[d]

the best she could do from the approved medications list." Id. She told him she would document his worsening conditions and refer him to a specialist. Id. at ¶18. But the nurse advised him that "the harsh reality" was that the Medical Director (Troutman) had to approve referrals, and it was unlikely he would do so "unless [the plaintiff] was paralyzed." Id. The plaintiff filed a grievance addressed to the Medical Director, but in response he merely saw the same nurse practitioner. Id. at ¶19. The plaintiff says his condition only worsened, and he "felt like [he] was dying." Id. at ¶20.

The plaintiff alleges he was stuck in a cyclical pattern: he requested treatment, nurse practitioners examined him and submitted referrals, the Medical Director denied the referrals, the plaintiff asked the Director for help and the Director referred him back to the nurse practitioners, who again told him they had to seek approval from the Director. Id. at ¶21. The plaintiff says he remained in constant pain that affected "almost all of normal daily activities." Id. He says Wellpath and the jail had his medical records and knew the severity of his back injury, but they ignored recommendations from jail medical staff that he undergo surgery. Id. at ¶23.

The plaintiff says his treatment finally changed after he "asked Wellpath for [his] medical records for the preparation of a 1983 civil suit," which request was denied. Id. at ¶24. But shortly after, in October 2022, Wellpath approved him for a consultation with an offsite neurologist at Aurora Spine Care Center in Milwaukee. Id. at ¶25. Staff at the Spine Care Center recommended that the plaintiff receive unspecified injections, but he says they were ineffective. Id. at

¶26. The plaintiff reported to Wellpath that the treatment had not helped and requested a follow-up consultation. Id. He says that on February 26, 2023, he wrote a medical request describing how he experienced "temporary paralysis at 3AM while attempting to stand," which caused him to fall and hit his head. Id. at ¶27. He reported the incident to Wellpath staff, including acting Medical Director Handel. Id. at ¶28. Another nurse practitioner saw the plaintiff the next day, and he told her about "the exacerbation of [his] health conditions and asked her to address pain management." Id. at ¶29. The nurse "was shocked" that the plaintiff had been allowed a muscle relaxer. Id. He asked for an alternative to the gabapentin that he had been prescribed because it "ma[de] [him] feel depressed and have adverse thoughts." Id. The nurse said she would ask, but the plaintiff never heard back from her. Id.

The plaintiff later suffered "another incident of partial paralysis[,] again losing feeling [in his] legs and falling down." Id. at ¶30. He says a correctional officer found him and called for a medical emergency. Id. On March 6, 2023, a nurse practitioner saw the plaintiff, but she was a new hire who "knew nothing of situation that was on going [*sic*]." Id. Like the other nurses, she told the plaintiff she had limited options but would ask a doctor if there was an alternative that she could prescribe. Id. at ¶31. The plaintiff says he only ever received additional doses of gabapentin, despite his complaints about the depressive side effects. Id. at ¶32.

On March 9, 2023, the plaintiff was prescribed a third dose of gabapentin; on March 14, 2023, the plaintiff submitted a medical request

8
Case 2:23-cv-00972-PP   Filed 10/11/23   Page 8 of 19   Document 11

about the side effects from the gabapentin. Id. at ¶33. A nurse saw the plaintiff the next day about his request. Id. at ¶33. The plaintiff explained that he'd consistently reported that gabapentin made him feel depressed; the nurse offered to take him off the gabapentin and to refer him to psychological services. Id. The plaintiff responded that he'd already "reached out to psych services," and that he was willing to stop using the gabapentin but that he'd need an alternative. Id. The plaintiff specifically "asked about the medication recommended by the surgeon," but the nurse told him "that they don't prescribe opioids." Id. at ¶34. The plaintiff says she prescribed him Tylenol in addition to, instead of in place of, gabapentin. Id. He says the nurse's apparent indifference to his medical history "f[u]rther exacerbated [his] emotional stability." Id. On March 23, 2023, the plaintiff told the nurse who was passing out medications that he was "improperly medicated." Id. at ¶35. That nurse agreed that the nurse who prescribed Tylenol "did over medicate [him] and was negligent in her duties to [his] serious medical needs." Id.

The plaintiff says that after twenty months, he was approved for cervical spine surgery on April 18, 2023. Id. at ¶36. He claims this surgery was again delayed until May 16, 2023, "due to poorly trained staff member" at the jail. Id. He cites a page of his medical records that shows his surgery was delayed on April 18, 2023, "due to the patient eating breakfast that morning." Dkt. No. 1-1 at 47. The plaintiff says that a correctional officer "delegated her responsibility (allegedly) to another person" but insists that Wellpath "could've told the night nurse to deliver the surgical requirements to [him]." Dkt. No. 1 at ¶37.

The plaintiff claims that Milwaukee County and Wellpath have "adopted a practice of not answering grievances until they are well beyond the time limit the grievance process allows," which renders the process ineffective. Id. at ¶38. He says that Milwaukee County is aware that its healthcare provider (Wellpath) does not deliver effective medical treatment for persons incarcerated at the jail. Id. at ¶39. The plaintiff says he has told "multiple Jail staff" about his concerns with his treatment, and they repeatedly told him "that medical personnel has [sic] been given full decission [sic] making authority over inmate healthcare at Milwaukee County Jail." Id. at ¶40.

The plaintiff claims that Wellpath's failure to provide him proper and timely medical treatment violates his rights under the Eighth and Fourteenth Amendments. Id. at ¶41. He claims that Milwaukee County has failed in its "duty to provide adequate medical care for pre-trial detainees" and should be held liable for the failures of its provider, Wellpath. Id. at ¶45. He asserts that the defendants' failure to provide him timely and proper medical treatment also "greatly errode [sic] the inherant [sic] Fourteenth Amendment rights to equal protections under the law." Id. at ¶54. He seeks compensatory and punitive damages of over $2.6 million. Id. at 27.

C. Analysis

The plaintiff says that during the events alleged in the complaint, he was a pretrial detainee at the Milwaukee County Jail. Because the plaintiff was a pretrial detainee at the time of the alleged events, his claim that he was denied adequate medical care arises under the Fourteenth Amendment. Miranda v.

County of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). To proceed on this claim, the plaintiff must show that 1) "the 'defendants acted purposefully, knowingly, or perhaps even recklessly'" and 2) "the defendants' actions were [not] 'objectively reasonable.'" Pittman by & through Hamilton v. County of Madison, Ill., 970 F.3d 823, 827 (7th Cir. 2020) (quoting Miranda, 900 F.3d at 353–54). Neither negligence, gross negligence nor medical malpractice amount to deliberate indifference. See Miranda, 900 F.3d at 353. The plaintiff's allegations must show "'more than negligence but less than subjective intent—something akin to reckless disregard'" to proceed on a Fourteenth Amendment claim. Id. at 353–54 (quoting Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018)).

The plaintiff alleges that over the course of more than twenty months, he repeatedly requested treatment for his serious medical issues but received only over-the-counter pain medications and basic treatment. He says nurses repeatedly referred him for advanced treatment, but the medical director routinely denied the referrals. The plaintiff underwent hernia repair after waiting five months, and he eventually received an offsite consultation for his other issues but only after he threatened to file a lawsuit. He says that treatment was ineffective, and he did not receive a follow-up appointment. He suggests that Wellpath follows a cost containment program under which his treatment was repeatedly denied or delayed. He claims that Milwaukee County similarly has policies, procedures or practices of providing substandard care for detainees at the Milwaukee County Jail. He says his pain continued and his

symptoms worsened because of the constant delays despite the requests for different treatment that he sent to the defendants, including the Medical Director at Wellpath. The court finds that these allegations sufficiently state a claim that the defendants purposefully, knowingly or recklessly denied him proper medical care and that denial was not objectively reasonable, in violation of the plaintiff's rights under the Fourteenth Amendment.

The court must decide whether the plaintiff may proceed on that claim against the named defendants—Wellpath and Milwaukee County. The complaint names several Wellpath and Milwaukee County Jail staff, including nurses, doctors, lieutenants and captains. It is possible that the plaintiff could state a claim against one or more of these individuals. But the plaintiff merely names those person in describing his allegations; he did not name any of them as defendants or say that he wanted to proceed on a claim against any of them. Instead, the plaintiff seeks to proceed against Wellpath and Milwaukee County. The court will not assume that the plaintiff also seeks to proceed against any individual defendants.

A private corporation like Wellpath that has contracted to provide essential government services, such as health care for incarcerated persons, "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." Shields v. Illinois Dep't of Corr., 746 F.3d 782, 789 (7th Cir. 2014). The private corporation may not be held liable for the actions of its employees under a theory of *respondeat superior*. Id. (citing Iskander v. Vill. of Forest Park, 690

F.2d 126, 128 (7th Cir. 1982)); see also Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). The plaintiff must allege "that his injury was caused by a [corporation] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy." Shields, 746 F.3d at 796 (citing Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004)).

Similarly, a local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

13
Case 2:23-cv-00972-PP   Filed 10/11/23   Page 13 of 19   Document 11

As the court just explained, the complaint does not name any individuals as defendants; it names Wellpath and Milwaukee County. The complaint details what the plaintiff believes is a policy or practice of denying or delaying medical care to detainees at the Milwaukee County Jail. The plaintiff alleges that that Wellpath has a policy or practice of providing substandard care to detainees. He says that Milwaukee County provides Wellpath full discretion over decisions on detainee care and defers to those decisions, despite knowing about its policy or practice of providing inadequate treatment. The plaintiff seeks to hold Wellpath and Milwaukee County responsible for his medical issues, which he says the defendants exacerbated by denying and delaying his treatment for over twenty months.

The court finds that the complaint states sufficient facts to allow the plaintiff to proceed on a claim against Wellpath and Milwaukee County based on their alleged policy or practice of providing detainees inadequate or delayed medical care at the jail. The court will allow the plaintiff to proceed on his Fourteenth Amendment claim against Wellpath and Milwaukee County.

The plaintiff also seeks to proceed on a claim under the Equal Protection clause of the Fourteenth Amendment. That clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, §1. The Equal Protection Clause protects against arbitrary discrimination "unrelated to the character of the activity allegedly discriminated against." Reed v. Faulkner, 842 F.2d 960, 962 (7th Cir. 1988). To state a claim under the Equal Protection Clause, the plaintiff must

allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor." Lisle v. Welborn, 933 F.3d 705, 719–20 (7th Cir. 2019). In the context of pretrial detainees, "the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000).

The complaint does not state a claim under the Equal Protection Clause. The plaintiff alleges that the defendants mistreated or delayed treating his medical issues, which worsened his symptoms and injuries. But he has not alleged that they did so because of his race, ethnicity, religion or other prohibited factor. He has not alleged that he was singled out for worse treatment or care based on any factor or reason. Nor has he alleged that the defendants treated other, similarly situated detainees at the jail better than him. See Caldwell v. Hoffman, Case No. 22-cv-678-pp, 2022 WL 15523048, at *4 (E.D. Wis. Oct. 27, 2022) (citing Gill v. Aramark Corr. Servs., No. 18-cv-540-pp, 2018 WL 4233011, at *4 (E.D. Wis. Sept. 5, 2018); and Cardenas v. Washington, 12 F. App'x 410, 412 (7th Cir. 2001)). Perhaps the plaintiff is trying to allege that the defendants provided him inadequate care because of his status as a pretrial detainee. But the plaintiff alleges that *all* pretrial detainees were treated equally poorly. He has not alleged, for example, that pretrial detainees at the jail are treated worse "than convicted offenders in the same institution," Lock v. Jenkins, 641 F.2d 488, 497 (7th Cir. 1981), or that pretrial detainees are treated worse than those at another Milwaukee County

institution, May, 226 F.3d at 882, either of which might violate the Fourteenth Amendment. The plaintiff has not alleged a basis for the court to find that the defendants violated his right to equal protection under the Fourteenth Amendment.

The plaintiff also claims that Milwaukee County has a policy or practice of not timely responding to grievances. To the extent the plaintiff seeks to proceed on a claim about his grievances, he has not stated a claim. There is no inherent constitutional right to an effective grievance system. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Steinke v. Dittmann, No. 17-cv-656-pp, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020). That means the plaintiff cannot state a claim regarding his grievances that were ignored or not timely answered. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the complaint and this order to Milwaukee County for service. Under the informal service agreement, the court **ORDERS** defendant Milwaukee County to respond to the complaint within 60 days.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Wellpath, LLC, under Federal Rule of Civil

16
Case 2:23-cv-00972-PP   Filed 10/11/23   Page 16 of 19   Document 11

Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Wellpath to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$328** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Racine Correctional Institution where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 11th day of October, 2023.

          **BY THE COURT:**

          _____
          **HON. PAMELA PEPPER**
          **Chief United States District Judge**